**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

GREGORY KAY, an individual;

        Plaintiff,

v.                                         CIVIL  ACTION  NO.  3:05-0612

AMERICAN ELECTRIC POWER
SERVICE CORPORATION, an Ohio
Corporation, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendants' joint motion for summary judgment on Plaintiff's first and second causes of action under ERISA sections 502(a)(1)(B) and 502(a)(3)(B) (Doc. 17) regarding the denial of Plaintiff Gregory Kay's application for disability benefits, and Defendant American Electric Power System Long-Term Disability Plan's motion for summary judgment on its counterclaim (Doc. 19).  Having reviewed the parties' submissions and the administrative record, Defendants' joint motion for summary judgment on Plaintiff's first and second causes of action under ERISA section 502(a)(1)(B) and 502(a)(3)(B) is **GRANTED**.  Defendant American Electric Power System Long-Term Disability Plan's motion for summary judgment on its counterclaim is **DENIED**, and the counterclaim is **DISMISSED**.  Defendants request for attorney's fees and costs under § 502(g) on both of these motions is **DENIED**.

**I.**      **Standard of review**

In order to obtain summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party must show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law.  Here, the parties do not dispute the material facts contained in the administrative record.  Accordingly, the Court ordered the parties to submit cross-motions for summary judgment to resolve the legal issue presented by this case.  *See* Scheduling Order, Doc. 10, entered August 24, 2005.  Only Defendants filed motions for summary judgment.[1]  All Defendants joined in the motion for summary judgment on Plaintiff's claim that the decision denying Plaintiff's claim for benefits was not unreasonable in light of the administrative record (Doc. 17).  Defendant American Electric Power System Long-Term Disability Plan ("the Plan") filed a separate motion for summary judgment on its counterclaim which seeks to recover overpayment to Plaintiff after he received an award of Social Security Disability Income (SSDI) benefits (Doc. 19).  Plaintiff failed to file a response to this motion.[2]  This Court will proceed to the merits of both motions.

## II.    Factual  Background

Gregory Kay worked as a maintenance mechanic at Defendant American Electric Power Service Corporation ("AEP") until January 2, 2001.  AEP sponsored the Plan, an ERISA-covered employee benefit plan providing long-term disability benefits in accordance with its terms.  AEP funds the Plan, but Defendant Broadspire Services, Inc. ("Broadspire") handled the claims

---

[1]In his response to Defendants' joint motion for summary judgment, Plaintiff argues that a material issue of fact remains as to whether the decision to deny disability is supported by substantial evidence.  Even after Defendants replied that this argument was inappropriate under the Court's previous Order, Plaintiff failed to move to file a cross-motion out of time or any further supplemental brief.

[2]Although Plaintiff failed to respond to this motion, the Plan is not entitled to summary judgment by default under Rule 56.  Instead, "the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law."  *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)(citing *Fed. R. Civ. Pro* 56(e))(providing, "if the adverse party does not so respond, summary judgment, *if appropriate,* shall be entered against the adverse party")(emphasis added).

administration.  The Plan provides, "[i]f you are unable to perform the duties of **your** job, you are eligible for benefits for up to 24 months from the date of your disability."  AR00200 (emphasis in original).  Then, the Plan provides that "if you are unable to perform the duties of **any** job for which you are reasonably qualified due to education, training and experience, you may receive benefits up to the maximum benefit period."  *Id.*

 In January 2001, Mr. Kay submitted a claim for long term disability with the Plan.  The following provides a summary of the evidence submitted in the administrative record, which the Court reviewed in making its determination.  In support of his application, Mr. Kay claimed his diagnoses included chronic Epstein-Barr virus, headaches and extreme fatigue related to sleep apnea.  Mr. Kay's treating physician, Dr. Lois J. Bosley, rated his physical impairment as a "severe limitation of functional capacity/incapable of sedentary work."  AR00651.  She also indicated that Mr. Kay "is unable to perform daily tasks [at] home, cooking, cleaning."  *Id*.  Throughout 2001, Dr. Bosley noted that Mr. Kay continued to complain of extreme fatigue.  She further noted some symptoms of depression, which she attributed to inactivity.  *See*, *e.g.*, AR00303; AR00305; AR00306.  After unsuccessful attempts to treat his symptoms, Dr. Bosley noted that "I am at a loss for what else to do to try to help the patient.  His physical exam does not reveal any abnormalities.  The lab work doesn't reveal abnormalities."  AR00302; *see also* AR00307.  The documentation during this time period also suggests that Mr. Kay began treatment for his sleep apnea with the use of a CPAP mask, and although he was initially intolerant of the mask, Mr. Kay's sleep apnea was being successfully treated.  AR00302-AR00303, AR00307.

 On April 11, 2001, Mr. Kay was examined by an independent medical examiner, Dr. Marc Whitsett.  AR00733-AR00736.  His examination resulted in the conclusion that the diagnoses for

Mr. Kay's symptoms remained unspecified. However, his working diagnoses were "chronic fatigue syndrome, rule out persistent obstructive sleep apnea, rule out reactivation of Epstein-Bar virus." AR00735. Dr. Whitsett concluded that Mr. Kay was capable of working four hours a day if restricted to sedentary work until further diagnoses by specialists. Dr. Whitsett recommended that these restrictions be reevaluated in four months.

On September 26, 2001, Mr. Kay completed a functional capacity evaluation (FCE) conducted by the Holzer Clinic. AR00943. Mr. Kay had difficulty completing some of the tasks, such as walking on the treadmill for fifteen minutes. However, the result of the evaluation placed Mr. Kay in the sedentary to light physical demand level. *Id.*

Upon review of this medical evidence initially submitted, Mr. Kay was approved for benefits under the Plan's "own occupation" standard effective July 29, 2001. Throughout the process, Broadspire requested updated medical information and documentation. In June 2002, Broadspire became aware that Mr. Kay was diagnosed with renal cancer, and was undergoing a nephrectomy to remove his left kidney. Accordingly, Mr. Kay was informed that he met the Plan's "any occupation" standard and would continue receiving benefits beyond the 24-month "own occupation" period.

Broadspire continued to receive updated medical documentation. It received various medical reports from Dr. Randall Hawkins, a treating physician. On January 1, 2003, Dr. Hawkins noted that Mr. Kay was "doing quite well." On January 9, 2003, and June 26, 2003, Dr. Hawkins received a report from the doctor who performed the kidney nephrectomy indicating that, while Mr. Kay has some mild pain and swelling, the incision scar is well healed with no evidence of hernia. AR00869; AR00880.

In a short report sent to Broadspire dated March 25, 2003, Dr. Sandra Pinkham stated that Mr. Kay was completely disabled "because of subtle influences on the brain." AR00238. Dr. Pinkham saw Mr. Kay on two occasions. She based her conclusion on the fact that Mr. Kay had encephalitis ten years earlier, and his health had declined since knee surgery, gallbladder surgery, and his nephrectomy for kidney cancer. The only physical examination results she reports are that he "appears physically healthy with excellent muscle development." She also relied upon a neuropsychological test performed February 5, 2002 by another physician, which showed problems "felt to be in the right cerebral cortex," but no structural lesions. The rest of Dr. Pinkham's report reviews Mr. Kay's subjective complaints of pain, fatigue, nausea and weakness.

On November 11, 2003, Mr. Kay underwent another FCE in order to assess his functional abilities in the workplace at that time. AR00973-AR00998. This evaluation determined that Mr. Kay functioned at the light physical demand classification. Mr. Kay was able to perform stooping, but declined to perform kneeling or crouching due to cramping. The report concluded that Mr. Kay "is able to tolerate prolonged sitting throughout the evaluation without complaints of pain. However, he does report fatigue and demonstrates the need for frequent rest breaks with prolonged walking or standing." AR00975. The examiner noted that Mr. Kay gave a "reliable but self-limited effort in this evaluation." AR00978.

After receiving updated medical information and reviewing the results of Mr. Kay's functional capacity evaluation in November 2003, Broadspire performed an employability assessment. AR 01007-AR01011. This evaluation, conducted in December 2003, concluded that Mr. Kay was unable to return to his pre-disability position as a maintenance mechanic. However,

the examiner determined that Mr. Kay had transferable skills for four occupations. At least one of these occupations was within the local job market.

On February 11, 2004, Broadspire informed Mr. Kay that his long term disability benefits would terminate effective March 15, 2004. As specifically provided by the review process under the Plan, Mr. Kay appealed Broadspire's decision to terminate his benefits. On March 15, 2004, Mr. Kay again underwent a FCE at the Holzer Clinic upon the referral by his physician, Dr. Hawkins. *See* AR00413-AR00416. The evaluator concluded that Mr. Kay tested in a sedentary physical demand classification.

At some time after this FCE, Dr. Hawkins submitted an undated letter concluding that Mr. Kay was permanently disabled and unable to return to work. *See* AR00342. In this letter, Dr. Hawkins notes that Mr. Kay has swelling in the area where the nephrectomy was performed creating the potential for herniation, he was diagnosed with non-alcoholic fatty liver, and has chronic fatigue, which makes him unable to work due to the lack of concentration, coordination and memory loss. The letter notes that the elastic support which Mr. Kay used in order to control the swelling in his lower abdomen did not alleviate the symptoms of the weakened area, and instead had the effect of increasing atrophy to the area. Dr. Hawkins concluded that "[t]his condition in itself is a disabling injury, making any conventional full-time employment an immediate danger to the health of the subject." Dr. Hawkins further notes that Mr. Kay's sleep apnea has continued despite the use of a CPAP machine, and that Dr. Pinkham expressed "possible early onset Alzheimer's disease or possible Dementia."[3] In this letter, Dr. Hawkins does not cite to any objective medical evidence.

---

[3]A review of Dr. Pinkham's report submitted as part of the administrative record shows no reference to either one of those diagnoses. She only reported "subtle influences on the brain."

He details only what other physicians have supposedly concluded, and the subjective complaints of Mr. Kay.

On February 18, 2005, Broadspire informed Mr. Kay that the prior decision to terminate benefits was upheld.  Broadspire concluded that it could not determine that Mr. Kay was unable to perform any occupation for which he was reasonably qualified.  At this first level appeal, Broadspire reviewed medical records and reports dating from January 2001 through December 2004, including the letter from Dr. Hawkins and the March 15, 2004 FCE.  Broadspire also relied upon peer reviews from eight independent physicians specializing in various areas related to Mr. Kay's health concerns.  Each of these physicians concluded that Mr. Kay was not totally disabled nor unable to perform "any occupation" as defined by the Plan.

As an illustration of the content of the peer reviews reports, Dr. Dennis Mazal noted that while Mr. Kay has documented sleep apnea, and an inability to tolerate the CPAP therapy, "there is no objective documentation to support a loss of functionality on the basis of obstructive sleep apnea."  AR00117.  Further, Dr. Mazel concluded that although Mr. Kay had an abnormal liver biopsy indicating a fatty liver, "there is no objective documentation to support a loss of functionality on the basis of those laboratory results."  AR00118.  Similarly, Dr. Lawrence Burstein noted that, although Mr. Kay has reported symptoms of  depression, "the examination findings submitted do not support impairments in those areas."  AR00127.  In regards to changes in Mr. Kay's neuropsychological examination in 2002, he stated that the changes were attributed to encephalitis in 1993, and had not affected his ability to perform any occupation previously.  Dr. Burstein further noted that, as to Dr. Hawkins letter indicating that Mr. Kay has early onset of dementia or Alzheimers, this is inconsistent with the neuropsychological evaluation relied upon by Dr. Pinkham.

In another peer report, Dr. Jacques Caldwell stated that it was unlikely that Epstein-Barr virus was the cause of Mr. Kay's complaint of chronic fatigue.  AR00463-AR00464.  Mr. Kay reported having mononucleosis when he was twenty years old, and patients with prior exposure commonly test positive for the Epstein-Barr antibody.

After the denial of the first level appeal, Mr. Kay notified Broadspire of his appeal to the second level of the process on March 18, 2005.  At this point, Mr. Kay also retained counsel to prepare his appeal documents.  Included in these documents was a report from Joe Woolwine, making the conclusory statement that Mr. Kay was totally disabled, and could perform no work for which he is substantially qualified.  AR00345-AR00346.  This conclusion was based upon the review of the February 18, 2005, letter from Broadspire upholding its decision at the first level appeal, the November 11, 2003, FCE placing Mr. Kay in the light physical demand classification, and the social security administration decision awarding Mr. Kay benefits.  Also submitted were the examination notes by Dr. Young Choi regarding Mr. Kay's hiatal hernia that "repair is not promising."  AR00236.  Another physician also recommended surgery to alleviate Mr. Kay's sleep apnea, but there is no evidence that Mr. Kay has followed up on that recommendation.

At the second level review, Broadspire again requested peer review reports from seven independent specialists.  None of these seven participated in the review process at the first level.  Each of these physicians concluded that the medical evidence does not support a finding of total disability.  *See* AR00441-AR00471.  By letter dated July 1, 2005, Broadspire informed Mr. Kay that the decision to terminate benefits was upheld.  Again, Broadspire concluded that Mr. Kay did not meet the Plan's "any occupation" standard.

Mr. Kay filed this action on July 28, 2005. As the Defendants were preparing the administrative record for this action, they discovered that the final review of Mr. Kay's claim was performed without certain information and documents, which should have been included in the record. Accordingly, AEP told Broadspire to reevaluate the claim in light of the new information and documents. Mr. Kay was given the opportunity to supplement the record with any additional documents, but he declined to do so. Broadspire submitted the omitted documents to each of the seven peer reviewers involved in the final appeal, and they supplied supplemental reports. *See* AR01023-AR01051. Broadspire's prior determination remained unchanged after the reevaluations.

## III. Analysis

## A. Joint Summary Judgment Motion

Defendants first seek summary judgment on Plaintiff's first cause of action alleging a violation of ERISA section 502(a)(1)(B). Defendants also seek summary judgment on Plaintiff's second cause of action alleging a violation of ERISA section 502(a)(3)(B). The Court will address the two claims in turn.

(1) Section 502(a)(1)(B)

Under ERISA, courts must review an administrator's decision to deny pension plan benefits *de novo*, unless the plan itself confers discretionary authority upon the administrator "to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When an administrator possesses such discretion, courts may review the eligibility determination only for an abuse of discretion. *Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000); *Barron v. UNUM Life Ins. Co. of Am.*, 260 F.3d 310, 315 (4th Cir. 2001) (citation omitted). Under the abuse of discretion standard of review,

"the plan administrator's decision is reasonable if it is the result of a deliberate principled reasoning process and if it is supported by substantial evidence." *Smith v. Continental Casualty Co.*, 369 F.3d 412, 417 (4th Cir. 2004) (citation omitted).   In order to make this determination, a court may consider the non-exclusive list of factors enumerated in *Booth*: "the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have." *Booth*, 201 F.3d at 342-343.   In this case, the parties agree that the abuse of discretion standard applies.

With these principles in mind and after reviewing the administrative record, the Court finds that Broadspire's decision terminating Plaintiff's benefits under the Plan's "any occupation" standard was not an abuse of discretion.   Initially, the Court notes that Plaintiff's central complaint remains extreme fatigue and weakness.   He has reported an increase of fatigue on different occasions, but the increase is usually associated with physical exertion.   The fact that Plaintiff sometimes experiences increased fatigue upon physical exertion supports the conclusion by Defendants that Plaintiff is restricted to sedentary work, but it does not support a conclusion that even sedentary work is precluded.   Indeed, Plaintiff's own physician reports do not provide clinical data, objective findings, or otherwise sufficient findings from examinations or testing to support an award of total disability.

Plaintiff was evaluated during three formal FCEs, conducted at different times throughout the review process. Each of these concluded that the Plaintiff is capable of performing sedentary and/or light physical demand work. Indeed, the lifting and exertional limits noted in the FCE reports support an ability to perform sedentary work. To the extent that Plaintiff implies in his response to Defendants' motion that Dr. Winsett's report supports the argument that he is unable to perform "any occupation," the Court disagrees. Although Dr. Winsett's evaluation concluded that Plaintiff could only work twenty hours a week at a sedentary position, the Court notes that this evaluation was performed on April 11, 2001, and Dr. Winsett himself stated that further evaluation will provide a better understanding of Plaintiff's limitations, if any. Although Dr. Winsett recommended a sedentary four-hour workday, nothing in his report supports the conclusion of total disability. In any event, Broadspire relied upon Dr. Winsett's report to initally award Mr. Kay disability benefits.

Throughout the three level review process, Broadspire reviewed multiple reports from independent physicians. Not one of those physicians concluded that the objective evidence supports a claim for total disability. The only physicians who submitted reports concluding that Plaintiff is totally disabled were those provided by Plaintiff. However, the Court finds that Broadspire did not abuse its discretion in the weight given these reports. In making her conclusion, Dr. Bosley relied, in large part, upon Plaintiff's self-reported history. Moreover, there was nothing in the exam or tests that Dr. Bosley conducted which indicate or explain why Plaintiff would be precluded from performing sedentary work. In fact, she commented that neither the physical examination nor the lab work revealed any abnormalities. Likewise, Dr. Pinkham's report fails to include any objective evidence, whatsoever, to support her conclusion that Plaintiff is disabled due to subtle influences on the brain.

The Court notes that most, if not all, of Dr. Hawkins' conclusions are in direct conflict with the fifteen independent reports reviewed by Broadspire.  However, Dr. Hawkins provides no explanation of any exams or tests he conducted, which indicate or explain why Plaintiff would be precluded from performing sedentary work.  Dr. Hawkins cites to the FCE conducted in March 2004 for support that Plaintiff's condition has deteriorated.  However, he fails to acknowledge that the evaluator placed Plaintiff in the sedentary physical demand classification.  Finally, the Court notes that Dr. Hawkins grossly overstates the conclusion by Dr. Pinkham that Plaintiff is disabled "due to subtle influences on the brain."  AR00238.  This Court has searched the record, and has found only this one written report prepared by Dr. Pinkham.  Apparently from that statement in that one report, Dr. Hawkins concluded that Plaintiff has been diagnosed with "possible early onset of Alzheimer's disease or possible Dementia."  AR00342.  With such an overstatement, the Court cannot find that Broadspire abused its discretion in the resolution of the conflicting opinions.

Similarly, in his four-sentence opinion letter, Mr. Woolwine stated that he only reviewed three reports:  the February 18, 2005, letter from Broadspire upholding its decision at the first level appeal, the November 11, 2003, FCE, and the social security decision awarding Mr. Kay benefits. Without any explanation, other than citing these reports, Mr. Woolwine concluded that Plaintiff was precluded from his prior work, and had no transferrable skills to perform light or sedentary work. Mr. Woolwine fails to distinguish his conclusion from that of the FCE he relies upon, which specifically placed Plaintiff in the light physical demand classification.  Given the cursory nature of this letter, the Court finds this conclusion lacks support, and fails to provide any basis to question Defendant's employability and transferrable skills assessments.

In the face of three separate FCEs and an employability assessment report, Plaintiff rests his argument on the basis that he is totally disabled because he fails to meet the Plan's definition of being unable to perform "**any** job for which you are reasonably qualified due to education, training and experience." In his responsive brief, Plaintiff argues that "it is not sufficient to focus solely on the question of the Plaintiff's ability to perform sedentary or light physical functions. This is because, using the requirements of the Plaintiff's job as Maintenance Mechanic at AEP as representative of the Plaintiff's education, training, and experience, it is clear that his qualifications involve occupational activities that are far beyond the sedentary and light physical." Pl. Mem. in Opp. at 18. Plaintiff is essentially arguing that he is over-qualified for sedentary or light physical work. However, this is not the standard to determine whether Plaintiff may receive long term disability benefits under the Plan. The employability assessment determined that the skills Plaintiff acquired, in part due to his job as a maintenance mechanic, were transferable to sedentary and/or light physical occupations that existed in the local labor market and matched a minimum replacement wage. Because he had transferrable skills, based upon his education, training, and experience, he was not totally disabled.

In considering all the evidence as a whole, the Court finds that, at each step, Defendants considered the medical evidence submitted by Plaintiff, and gave Plaintiff the opportunity to supply any additional evidence he believed supported his claim of total disability. The Court finds that Defendants' physicians and claims personnel reviewed those records, and made reasonable conclusions based on a fair reading of Plaintiff's medical evidence. Thus, the Court finds that Defendants did not abuse their discretion in denying Plaintiff's claim for total disability benefits. Accordingly, summary judgment is granted in favor of Defendants on the first cause of action.

-13-

(2)      Section 502(a)(3)(B)

Defendants also contend that they are entitled to summary judgment on Plaintiff's second cause of action alleging a violation of section 502(a)(3)(B). Section 502 (a)(3)(B) provides that "[a] civil action may be brought...by a participant, beneficiary, or fiduciary...(B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  Plaintiff failed to address Defendants' argument regarding this claim in his responsive pleading.

In his second cause of action, Plaintiff claims that, "equitable relief is appropriate and necessary to: (a) redress the denial of the rights and benefits due under the Plan; and (b) enforce the provisions of 29 U.S.C. § 1132 et seq. and the terms of the Plan."  Compl. at ¶ 32.  Because this Court has found that Broadspire's decision terminating benefits is supported by substantial evidence, Defendants are entitled to summary judgment on Plaintiff's second cause of action for equitable relief.

**B.**      **Summary Judgment by the Plan on its Counterclaim**

The Plan filed a separate motion for summary judgment on its counterclaim.  Plaintiff did not file any response to this motion.  In its counterclaim, the Plan seeks the imposition of a constructive trust on future SSDI benefits.  The Plan specifically provides, "[a]ny disability benefits you receive will be reduced by other income you receive while disabled from other sources.  The other sources include...[a]ny disability benefits you are eligible to receive from Social Security."  AR00201.  The Plan further clarifies that, "[d]ependent Social Security benefits are considered a source of income, unless the dependent is living in another household, such as with a former spouse."  AR00202.

-14-

After learning that Plaintiff had received an award of SSDI individual benefits effective July 2001, the Plan determined that it was entitled to an offset for the amount it had paid to Plaintiff from July 29, 2001, to the date of the SSDI award, May 17, 2003.  Although not entirely clear, Plaintiff apparently wrote a check for $21,242.70 to cover the overpayment.  The Plan then learned that several members of Plaintiff's family were also awarded dependent SSDI benefits effective July 2001.  Again, the Plan determined that it was entitled to the overpayment from July 2001 to July 2003.  Beginning with payment in November 2003 through March 15, 2004, the Plan offset the SSDI family overpayment against the monthly benefit payable under the plan.  At the time of the March 15, 2004, termination of benefits, the Plan determined that Plaintiff still owed $9,049.72 of the dependent SSDI benefit overpayment.  It is this amount that the Plan seeks to recover by the imposition of a constructive trust on Plaintiff's future SSDI benefits.

This Court recently addressed this very issue in *Ross v. Penn. Mfrs. Ass'n Ins. Co.*, No. Civ. A. 1:05-0561, 2006 WL 1390446 (S.D.W. Va. May 22, 2006).[4]  In that case, the plaintiff brought a claim under ERISA against the plan for the denial of disability benefits.  *Id.* at *2.  The plan filed a counterclaim seeking reimbursement for overpayments occurring after plaintiff received SSDI benefits.  *Id.* at *6.  Specifically, the plan sought "the imposition of a constructive trust on future SSDI payments to plaintiff to the extent necessary to extinguish the overpayment."  *Id.* at *7.  The Court first determined that, as a general matter, the plan was able to seek reimbursement for the overpayment in the form of equitable relief under § 502(a)(3).  *Id.* (citing *Mid Atl. Med. Servs., LLC*

---

[4]While the Court understands that the *Ross* case was not decided until after Defendant filed its motion for summary judgment in this case, defense counsel should have made this Court aware of this decision, considering the fact that the case is direct precedent within this district on this issue.  This is especially true since defense counsel in this case was also the defense counsel in *Ross*, and should have been immediately aware that the Plan's requested relief was impermissible.

*v. Sereboff*, 407 F.3d 212 (4th Cir. 2005), *aff'd* 126 S.Ct. 1869 (May 15, 2006)).  However, the Court

held that "the Social Security Act itself prohibits the equitable assignment of disability benefits."

*Id.* at *8.

> The Court quoted the Social Security Act, which states:
>
> (a) The right of any person to future payment under this title shall not be transferrable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process...

42 U.S.C. § 407 (1998).  From the plain language of the statute, the Court concluded that "[w]hile

it is clear that a pension plan such as [the defendant plan] is permitted to reduce payments to persons

by a percentage of the amount of Social Security benefits received by them, this section (a) of this

statute explicitly prohibits the equitable action [the plan] now seeks...This court is not permitted

under the statute to place [the SSDI] benefits in any kind of constructive trust."  *Ross*, 2006 WL

1390446 at *8*; see generally Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 417

(1973)(finding that the Social Security Act imposes "a broad bar against the use of any legal process

to reach all social security benefits").  Accordingly, the plan's counterclaim was denied and

dismissed.  *Id.*

       This case is no different from *Ross*.  The Plan requests an action, the imposition of a

constructive trust on future SSDI benefits, that is not permitted by 42 U.S.C. § 407(a).  Because the

statute bars the relief requested by the Plan, the Plan's motion for summary judgment on its

counterclaim must be denied, and the counterclaim is dismissed.

**C.      Defendants Request for Attorney's Fees and Costs**

Finally, Defendants request attorney's fees and costs on both of these motions.  Pursuant to

29 U.S.C. § 1132(g)(1), the Court has discretion to award attorney's fees and costs to a prevailing

party in an ERISA action.[5]  *See Martin v. Blue Cross & Blue Shield of Virginia, Inc.*, 115 F.3d 1201,

1210 (4th Cir. 1997) (holding that "only a prevailing party is entitled to consideration for attorneys'

fees in an ERISA action").  In this case, the Defendants were the prevailing party on the section

502(a)(1)(B) and section 502(a)(3)(B) claims.  The Fourth Circuit has adopted a five factor test for

district courts to consider when deciding whether to award attorney's fees under ERISA.  *See*

*Johannssen v. Dist. No. 1-Pac Coast Dist.*, 292 F.3d 159, 179 (4th Cir. 2002).  These five factors

are:

> (1) degree of opposing parties' culpability or bad faith;
> (2) ability of opposing parties to satisfy an award of attorneys' fees;
> (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
> (5) the relative merits of the parties' positions.

*Id.*

After considering these factors, this Court does not find that Defendants are entitled to an

award of attorney's fees and costs.  There is no evidence of Plaintiff's culpability or bad faith.  To

the contrary, Mr. Kay certainly has the right under ERISA to challenge the Defendants' decision to

terminate his long term disability benefits.  There is also no evidence that Plaintiff has the ability

to pay for Defendants' attorneys fees.  There is no information before the Court that Mr. Kay has

---

[5]29 U.S.C. § 1132(g)(1) provides: "In any action under this subchapter...by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

any other source of income besides his monthly SSDI benefits.  As previously discussed, those benefits may not be reached by this Court.  This is also not a case where the Court should award fees to Defendants in order to deter other plaintiffs from filing claims under similar circumstances.  If plan beneficiaries, acting in good faith like Mr. Kay, believe that the plan made a decision to terminate disability benefits that was unsupported by the medical evidence, they are entitled under ERISA to challenge that decision.  The other two factors are not relevant in the present case, which involved a fact-intensive inquiry into the decision to deny Mr. Kay benefits.

After considering the facts of this case, the Court **DENIES** Defendants' request for attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

## IV.    Conclusion

For the foregoing reasons, Defendants' joint motion for summary judgment on Plaintiff's first and second causes of action under ERISA section 502(a)(1)(B) and 502(a)(3)(B) is **GRANTED**.  Defendant American Electric Power System Long-Term Disability Plan's motion for summary judgment on its counterclaim is **DENIED**, and the counterclaim is **DISMISSED**.  Defendants' request for attorney's fees and costs is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Written Opinion and Order to all counsel of record and any unrepresented parties.

ENTER:          August 3, 2006

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-18-